UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 22-100 (SRN/ECW)

UNITED STATES OF AMERICA,

Plaintiff,

v.

JULYEN ALONZO MARTIN,

Defendant.

**PLEA AGREEMENT AND
SENTENCING STIPULATIONS**

The United States of America and Defendant Julyen Alonzo Martin (hereinafter referred to as "the defendant") agree to resolve this case on the terms and conditions that follow. This plea agreement binds only the defendant and the United States Attorney's Office for the District of Minnesota (hereinafter "the United States" or "the Government"). This agreement does not bind any other United States Attorney's Office or any other federal or state agency.

1.    **Charges.** The defendant agrees to plead guilty to Counts 1 and 2 of the Indictment, which charges the defendant with Cyberstalking victims T.A. and J.L., in violation of 18 U.S.C. § 2261A(2)(B). The defendant fully understands the nature and elements of the crimes with which he has been charged. At the time of sentencing, the Government agrees to move to dismiss the remaining counts of the Indictment.

2.    **Factual Basis.** The defendant is pleading guilty because he is in fact guilty of Counts 1 and 2 of the Indictment. In pleading guilty, the defendant admits the following

SCANNED

MAR 1 7 2023

U.S. DISTRICT COURT ST. PAUL

facts and that those facts establish his guilt beyond a reasonable doubt and constitute relevant conduct pursuant to the United States Sentencing Guidelines:

      a.     The defendant and T.A. were previously married and had a child together. T.A. subsequently left the defendant in 2019, and moved to New York, later obtaining a divorce from the defendant and sole custody of their child. After their relationship ended, from about September 2020 through in or about December 2021, the defendant, while in the State and District of Minnesota, cyberstalked and threatened to kill, injure, or harass his ex-wife T.A. The defendant admits that he sent threats and unwanted messages via electronic communications over text message and social media applications to T.A. The defendant agrees that he sent these threats as a part of his harassing course of conduct. For example, the defendant messaged T.A. on June 5, 2021, "I will fuck up your life as long as I live. Someone better come kill me right now. Before I kill somebody. You know what I wanna do. I'm tired of calling people." The defendant also threatened those in T.A.'s life with violence.

      b.     The defendant also admits he posed as T.A. online by creating social media accounts using T.A.'s name and likeness as a part of his cyberstalking course of conduct. The defendant made posts with these fake social media profiles stating T.A. was "a dirty whore" and falsely claiming she had HIV. The defendant admits that he had no authority to use T.A.'s name or likeness in this manner.

      c.     From about September 2020 through in or about January 2021, the defendant also admits he sent messages threatening to kill T.A.'s stepfather J.L. and engaged in a course of conduct with the intent to injure, harass, or intimidate J.L. J.L. has

never met the defendant. J.L. is a resident of Ohio and is employed as the head of a private school. As a part of his harassing course of conduct, the defendant admits he called and messaged the National Center for Missing and Exploited Children ("NCMEC") in September and October 2020, falsely alleging that J.L. was using his work computer to view child pornography. The defendant also admits that he emailed and called J.L.'s employer several times in October 2020 claiming J.L. was a pedophile being investigated for child endangerment. The defendant admits that he posed as an FBI agent in furtherance of his cyberstalking scheme and claimed to be a "Special Agent with the Federal Bureau of Investigation endangered and exploited trafficked children" intending to search J.L.'s private school for evidence. Also, the defendant admits that he impersonated his ex-wife T.A. on Instagram to post comments on J.L.'s school's Instagram page, claiming J.L. was a pedophile under FBI investigation.

d.    The defendant admits that he was aware that T.A. has received two orders for protection issued against him, but the defendant continued to send T.A. unwanted threatening and harassing messages from the fall of 2020 through 2021. The defendant agrees that in his course of conduct he sent messages threatening T.A. in violation of orders for protection all with the intent to injure, harass, or intimidate T.A. and J.L. The defendant agrees that, in his course of conduct sending these threats and creating social media accounts in T.A.'s name with her likeness, the defendant used electronic communication services and systems of interstate commerce.

e.    The defendant agrees that the threatening and harassing messages and his other online conduct towards T.A. and J.L. could reasonably be expected to, and did in

fact, cause T.A. and J.L. substantial emotional distress. As a result of the defendant's conduct, T.A. changed residences and her phone number. Further, T.A. shut down her online business as a result of the defendant's online stalking and posting messages on social media accounts while posing as T.A.

      f.     The defendant agrees that as a result of his conduct, J.L. filed a local police report and sought a criminal restraining order out of fear for J.L.'s safety. Further, the defendant agrees that that his false allegations against J.L. resulted in J.L. being subjected to employment and NCMEC investigations and the fear of losing his job. The defendant further agrees that all of the above-described conduct was knowing and voluntary.

      3.    **Waiver of Pretrial Motions.** The defendant understands and agrees that the defendant has certain rights to file pre-trial motions in this case. As part of this plea agreement, and based upon the concessions of the United States within this plea agreement, the defendant knowingly, willingly, and voluntarily gives up the right to have any pending motions resolved and to file any additional pre-trial motions in this case. The defendant agrees that, by pleading guilty, he is withdrawing any motions previously filed.

      4.    **Waiver of Constitutional Trial Rights.** The defendant understands that he has the right to go to trial. At trial, the defendant would be presumed innocent, have the right to trial by jury or, with the consent of the United States and of the Court, to trial by the Court, the right to the assistance of counsel, the right to confront and cross-examine adverse witnesses, the right to subpoena witnesses to testify for the defense, the right to testify and present evidence, and the right to be protected from compelled self-

incrimination. The defendant understands that he has the right to an attorney at every stage of these proceedings and, if necessary, one will be appointed to represent him. The defendant understands that he has the right to persist in a plea of not guilty and, if he does so, he would have the right to a public and speedy trial. By pleading guilty, the defendant knowingly, willingly, and voluntarily waives each of these trial rights, except the right to counsel. The defendant understands that a guilty plea is a complete and final admission of guilt and, if the Court accepts the guilty plea, the Court will adjudge the defendant guilty without a trial.

5. **Additional Consequences.** The defendant understands that as a result of his conviction, he could experience additional consequences, such as the loss of the right to carry firearms, the right to vote, and the right to hold public office.

6. **Statutory Penalties.** The defendant understands that Counts 1 and 2 of the Indictment (Cyberstalking, in violation of 18 U.S.C. § 2261A(2)(B)) are felony offenses that each carry the following statutory penalties:

    a.    a maximum of 5 years in prison;

    b.    a maximum supervised release term of 3 years;

    c.    a maximum fine of $250,000;

    d.    a mandatory special assessment of $100 per Count under 18 U.S.C. § 3013(a)(2)(A);

    e.    the possible loss of eligibility for federal benefits pursuant to 21 U.S.C. § 862(a)(1); and

    f.    a payment of mandatory restitution in an amount to be determined by the Court, pursuant to 18 U.S.C. § 3663A and paragraph 12 of this agreement.

7.     **Guideline Calculations.** The parties acknowledge that defendant will be sentenced in accordance with 18 U.S.C. § 3551, *et seq.* Nothing in this plea agreement should be construed to limit the parties from presenting any and all relevant evidence to the Court at sentencing. The parties also acknowledge that the Court will consider the United States Sentencing Guidelines in determining the appropriate sentence and stipulate to the following guidelines calculations. The parties stipulate to the following guidelines calculations:

a.     Base Offense Level.  The parties agree that the base offense level for Cyberstalking, in violation of 18 U.S.C. § 2261A(2)(B) (Counts 1 and 2), is **18.** U.S.S.G. § 2A6.2(a).

b.     Specific Offense Characteristics. The parties agree that the offense level for Cyberstalking should be increased by **4 levels,** because the offense involved the violation of a court protection order and a pattern of activity involving stalking, threatening, and harassing the same victim. U.S.S.G. § 2A6.2(b).  The parties agree that no other specific offense characteristics apply.

c.     Chapter 3 Adjustments. The parties agree that, other than acceptance of responsibility discussed below, no other Chapter 3 adjustments apply.

d.     Grouping. The government believes that Counts 1 and 2 do not group with each other, per the Sentencing Guidelines. *See* U.S.S.G. § 3D1.2(d). Because there were two counts of Cyberstalking equally as serious, the government asserts that a **2-level** increase applies. U.S.S.G. § 3D1.4. The resulting offense level is **24.**

The defendant does not agree that the 2-level increase for grouping applies, and reserves the right to argue against the 2-level increase.

e.     Acceptance of Responsibility. The government agrees to recommend that the defendant receive a **2-level** reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a). As the defendant has timely notified the government of his intention to enter a plea of guilty, the government agrees to recommend that the defendant receive an additional **1-level** reduction pursuant to U.S.S.G.

§ 3E1.1(b). Whether these reductions will be imposed shall be determined by the Court in its discretion. However, the defendant understands and agrees that the government's recommendations are conditioned upon the following: (1) the defendant testifies truthfully during the change of plea and sentencing hearings; (2) the defendant provides full, complete and truthful information to the United States Probation Office in the pre-sentence investigation; and (3) the defendant engages in no conduct inconsistent with acceptance of responsibility before the time of sentencing.

f.   Criminal History Category. Based on information available at this time, the parties believe that defendant's criminal history category is **I**. U.S.S.G. § 4A1.1. This does not constitute a stipulation, but a belief based on an assessment of the information currently known. The defendant's actual criminal history and related status will be determined by the Court based on the information presented in the Presentence Report and by the parties at the time of sentencing. The defendant understands that if the presentence investigation reveals any prior adult or juvenile sentence which should be included within his criminal history under the U.S. Sentencing Guidelines, the defendant will be sentenced based on his true criminal history category, and he will not be permitted to withdraw from this Plea Agreement. U.S.S.G. § 4A1.1.

g.   Guideline Range. If the adjusted offense level is **21 (18+4+2-3)**, and the criminal history category is **I**, the Sentencing Guidelines range is **37-46 months** of imprisonment. U.S.S.G. Ch. 5, Pt. A.

h.   Fine Range. If the adjusted offense level is 21, the fine range is **$15,000 to $150,000**. U.S.S.G. § 5E1.2(c)(3).

i.   Supervised Release. The Sentencing Guidelines advise a term of supervised release of at least one year but not more than three years. U.S.S.G. § 5D1.2.

8.   **Discretion of the Court.** The foregoing stipulations are binding on the parties, but do not bind the Probation Office or the Court. The parties understand that the Sentencing Guidelines are advisory and their application is a matter that falls solely within the Court's discretion. The Court will make its own determination regarding the applicable Guidelines factors and the applicable criminal history category. The Court may also depart

from the applicable Guidelines range. If the Court or the Probation Office determines that the applicable guideline calculations or the defendant's criminal history category is different from that stated above, the parties may not withdraw from this agreement, and the defendant will be sentenced pursuant to the Court's determinations.

9.   **Revocation of Supervised Release.** The defendant understands that if he were to violate any supervised release condition while on supervised release, the Court could revoke his supervised release, and the defendant could be sentenced to an additional term of imprisonment up to the statutory maximum set forth in 18 U.S.C. § 3583(e)(3). *See* U.S.S.G. §§ 7B1.4, 7B1.5. The defendant also understands that as part of any revocation, the Court may include a requirement that the defendant be placed on an additional term of supervised release after imprisonment, as set forth in 18 U.S.C. § 3583(h).

10.   **Agreements as to Sentencing Recommendation.** The parties are free to recommend whatever sentence they deem appropriate. The parties reserve the right to make a motion for departures and/or variances from the applicable Guidelines range pursuant to 18 U.S.C. § 3553(a), to oppose any such motion made by the opposing party, and to argue for a sentence outside the applicable Guidelines range. If the Court does not accept the sentencing recommendation of the parties, the defendant will have no right to withdraw his guilty plea.

11.   **Special Assessment.** The Guidelines require payment of a special assessment in the amount of $100 for each felony count of which the defendant is

convicted, pursuant to U.S.S.G. § 5E1.3. The defendant agrees to pay the $200 special assessment prior to sentencing.

12. **Restitution.** The defendant understands and agrees that the mandatory restitution provisions of both the Violence Against Women's Act, 18 U.S.C. § 2264, and the Mandatory Victim Restitution Act, 18 U.S.C. § 3663A, apply in this case. Under those provisions, the Court is required to order the defendant to make restitution to the victims of his crimes. At present, there is no agreement as to the amount of restitution owed to victims T.A. and J.L. The parties will attempt to reach an agreement before sentencing. If not, the government will request an evidentiary hearing on the issue of restitution.

13. **Disclosure of Assets.** The defendant will fully and completely disclose to the United States Attorney's Office the existence and location of any assets in which the defendant has any right, title, or interest, or over which the defendant exercises control, directly or indirectly, including those assets held by a spouse, nominee or other third party, or any business owned or controlled by the defendant. The defendant agrees to assist the United States in identifying, locating, returning, and transferring assets for use in payment of restitution, fines, and forfeiture ordered by the Court. The defendant agrees to complete a financial statement within two weeks of the entry of his guilty plea. The defendant further agrees to execute any releases that may be necessary for the United States to obtain information concerning the defendant's assets and expressly authorizes the United States to obtain a credit report on the defendant to evaluate his ability to satisfy financial obligations imposed by the Court. If requested by the United States, the defendant agrees to submit to one or more asset interviews or depositions under oath.

14.    **No Contact with Victims.** The defendant agrees that he will continue to comply with the Court's no-contact order, and further agrees that the defendant will not contact victims T.A., J.L., or their family, directly or indirectly through a third party throughout the period of his incarceration and supervised release.

15.    **Waivers of Appeal and Collateral Attack.** The defendant hereby waives the right to appeal any non-jurisdictional issues. This appeal waiver includes, but is not limited to, the defendant's waiver of the right to appeal guilt or innocence, sentence, and the constitutionality of the statutes to which the defendant is pleading guilty. The parties agree, however, that excluded from this waiver is an appeal by the defendant of the substantive reasonableness of a term of imprisonment above 46 months' imprisonment. The United States also agrees to waive its right to appeal any sentence except that it may appeal the substantive reasonableness of a term of imprisonment below 37 months' imprisonment. The defendant also waives the right to petition under 28 U.S.C. § 2255 except based upon a claim of ineffective assistance of counsel.

The defendant has discussed these rights with his attorney. The defendant understands the rights being waived, and the defendant waives these rights knowingly, intelligently, and voluntarily.

16.    **FOIA Waiver.** The defendant waives all rights to obtain, directly or through others, information about the investigation and prosecution of this case under the Freedom of Information Act and the Privacy Act of 1974, 5 U.S.C. §§ 552, 552A.

17.    **Complete Agreement.** The defendant acknowledges that he has read this plea agreement and has carefully reviewed each provision with his attorney. The defendant

further acknowledges that he understands and voluntarily accepts every term and condition

of this plea agreement. This plea agreement, along with any agreement signed by the parties

before entry of the plea, is the entire agreement and understanding between the United

States and the defendant.

ANDREW M. LUGER
United States Attorney

Date: 3/15/2023

BY:   HILLARY A. TAYLOR
Special Assistant United States Attorney

Date: 3-15/2023

JULYEN ALONZO MARTIN
Defendant

Date: 3/15/2023

KEVIN DEVORE
Counsel for Mr. Martin

11