UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 22-CR-100 (SRN/ECW) |
| | ) | |
| v.　　　　　　Plaintiff, | ) | **JULYEN MARTIN'S POSITION** |
| | ) | **REGARDING SENTENCING** |
| JULYEN ALONZO MARTIN, | ) | |
| | ) | |
| 　　　　　　Defendant. | ) | |

## INTRODUCTION

Defendant, Julyen Alonzo Martin, by and through his undersigned attorney, Kevin W. DeVore, submits this sentence position pursuant to Rule 83.10(e) of the Local Rules of the United States District Court for the District of Minnesota. Defendant respectfully requests the Court to a sentence of time served. Such a sentence is sufficient, but not greater than necessary, to satisfy the intended purpose of sentencing under the guidelines and the law.

## PROCEDURAL HISTORY

**A.　　Indictment.**

On May 24, 2022, a six-count Indictment was filed in the District of Minnesota, charging the defendant, Julyen Alonzo Martin, with the following:

Counts 1 and 2: Cyberstalking from in or about September 2020, through in or about December 2021, in violation of 18 U.S.C. § 2261A(2)(A)-(B).

Counts 3, 4, and 5: Interstate Transmission of a Threat to Injure Person of Another on or about September 14, 2020; June 5, 2021; and September 8, 2021, respectively, in violation of 18 U.S.C. § 875(c).

1

Count 6: Impersonating an Officer of the United States from on or about October 1, 2020, through on or about October 16, 2020, in violation of 18 U.S.C. § 912.

**B.    Plea Agreement**

On March 15, 2023, the defendant pleaded guilty to Counts 1 and 2 of the Indictment as charged. Pursuant to a written plea agreement, the parties agreed the base offense level is 18, pursuant to USSG §2A6.2(a), and that a 4-level enhancement, pursuant to USSG §2A6.2(b), is applicable because the offense involved the violation of a court protection order and a pattern of activity involving stalking, threatening, and harassing the same victim. The government believes Counts 1 and 2 do not group with each other and a 2-level increase applies, pursuant to USSG §3D1.4. At the time of the plea, the defendant did not agree with the grouping increase and reserved his right to object. The defendant now does not object to this 2-level increase as it is authorized under USSG §3D1.4. Finally, the government agreed to recommend a 3-level reduction for acceptance of responsibility, pursuant to USSG §3E1.1.

The Presentence Investigation Report ("PSR") recommends a base offense level of 18, plus a 4-level enhancement because the offense involved a violation of a court protection order and a pattern of activity involving stalking, threatening and harassing the same victim under USSG §2A6.2(b)(1).  (PSR ¶ 24 and 25.) The PSR also recommends a 2-level enhancement pursuant to USSG §3D1.4 for multiple count adjustments. (PSR ¶ 38.) After discounting three levels for acceptance of responsibility, the PSR recommends a total offense level of 21. (PSR ¶ 43.) With a criminal history category of I and a TOL of

21, the PSR recommends a guideline imprisonment range of 37 to 46 months.  (PSR ¶ 106.)

## BACKGROUND

### A.    Why Are We here?

Mr. Martin and T.A. were married in 2014 and had a child together in 2017.  (PSR ¶ 62.) The marriage lasted only five years before T.A. moved to New York and obtained a divorce. *Id.* Mr. Martin took their separation and ultimate divorce very hard not only because he was losing his wife but also because he was losing his son. (PSR ¶¶ 62 and 63.) In the end, it is really the loss of his connection to his son that has had the most dramatic impact on Mr. Martin from a mental and psychological health standpoint. This Court knows that Mr. Martin has struggled with some mental health issues and the separation from his son has only made the problem worse.  Indeed, the combination of depression, anger and alcohol abuse, likely lead to some very irrational thoughts on his behalf and ultimately lead to the conduct that resulted in him being charged in this case. (PSR ¶¶ 65, 73 and 79.)

Mr. Martin has spent nearly 15 months in custody and this time behind bars has forced him to look back on his life and reconsider many of the things he has done.  He realizes that his behavior that led to him being arrested and charged was unacceptable. (PSR ¶¶ 20 and 21.) Moreover, his continued refusal to accept responsibility for his actions led to him getting into more trouble than was necessary.  Since being in custody, Mr. Martin has participated in literally every program offered by the jail and has completed them with flying colors. (PSR ¶ 56.)

3

The court can see from the language Mr. Martin used in his written threats, the words he said, and the actions that he took came from a man who was crying out in anger and frustration over the loss of his son and his wife. To make matters worse, Mr. Martin was suffering from mental health issues at the time—this only exacerbated the problem. Even if it was his fault for his wife leaving, it was an extremely difficult time for him.

Spending fifteen months behind bars has given him an opportunity to reflect on his behavior and he understands that it was leading him to no where but trouble. Obviously, now convicted of two federal crimes has been very humbling for Mr. Martin. Although he will need to continue working on his mental health issues throughout his lifetime, Mr. Martin today is better equipped to handle his ups and downs in life.

### B.   Acceptance of Responsibility—Looking Forward.

At the time of his plea, Mr. Martin admitted his guilt to this crime and accepted responsibility for his conduct. (PSR ¶¶ 20 and 21.) Hindsight being 20/20, Mr. Martin realizes now that his behavior between September 2020 and December of 2022 was not only wrong, but it was also illegal and very scary for T.A. and J.L. He realizes now how destructive his behavior was and he is remorseful for what he did. (PSR ¶ 21.)

Mr. Martin feels genuinely sorry for T.A. and J.L., and for what he put them through. The type of person that Mr. Martin was in the past, which led to these federal charges, is not the person he wants to be going forward; nor does he want to be remembered as such by his family and friends. Most important to Mr. Martin is what his son thinks of him. It may take years to regain the trust of his son, but Mr. Martin is committed to proving to him that he is a good dad and good mentor.

4

## ARGUMENT

**A.  Section §3553(a) Factors Support a Sentence of time served.**

The Eighth Circuit has articulated a three-step sentencing procedure. *United States v. John H. Sitting Bear*, 436 F.3d 929, 934 (8th Cir. 2006). First, the Court is to determine the sentencing guideline range. *Id.* Second, the Court is to consider whether a departure is warranted under the guidelines. *Id.* Third, the Court should consider the factors enumerated in 18 U.S.C. § 3553(a) and determine the proper sentence based on the facts of the case. *Id.* In exercising its sentencing consideration, the Court is tasked with imposing "a sufficient sentence, but not greater than necessary" to comply with 18 U.S.C. §3553(a)(2). In so doing, the Court is to consider the factors articulated in 18 U.S.C. §3553(a). *Gall v. United States*, 552 U.S. 38, 49-50 (2007); *United States v. Barron*, 557 F.3d 866, 868 (8th Cir. 2009).

### 1.    Parsimony Provisions and Factors

A thoughtful sentence requires the Court to thoroughly consider the Parsimony Provisions before imposing the sentence.  18 U.S.C. §3553(a). Such a sentence shall be sufficient, but not greater than necessary, to comply with the purposes set forth in Section 3553. *Id.* Such purposes the court shall consider include: the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentenced imposed: (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other

correctional treatment in the most effective manner; and the kinds of sentences available. *Id.* Moreover, Section 3553(b) authorizes the Court to impose a sentence outside of the recommended guideline range if mitigating circumstances exist that were not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described. 18 U.S.C. §3553(b).

### 2.      The Guidelines are Advisory, Not Mandatory

The Supreme Court in *Booker* held that the United States Sentencing Guidelines are advisory, and that District Courts must examine all the §3553(a) factors in order to impose a sentence "sufficient, but not greater than necessary" to accomplish the goals of sentencing. *United States v. Booker*, 543 U.S. 220 (2005). The ensuing trio of 2007 Supreme Court cases made abundantly clear that District Courts must fashion individualized sentences based on the unique facts and circumstances of each case, and that the Guidelines emphatically do not enjoy a presumption of reasonableness. *See Gall* at 602 (probationary sentence substantially outside of Guidelines was reasonable and justified); *Kimbrough v. United States*, 128 S.Ct. 558, 570 (2007)(sentencing courts may depart from Guidelines range based solely on policy considerations, including disagreements with Guidelines drug sentencing policies); *Rita v. United States*, 127, S.Ct. 2456, 2465 (2007)(sentencing courts may vary based on arguments that Guidelines sentencing range itself fails to comport with §3553(a) factors). The thrust of *Booker* and its progeny is "that the District Court is free to make its own reasonable application of the §3553(a) factors, and to reject (after due consideration) the advice of the Guidelines." *Kimbrough*, 128 S.Ct. at 577 (Scalia, J., concurring).

The "Guidelines are not only not mandatory on sentencing courts; they are also not to be presumed reasonable." *Nelson v. United States*, 129 S.Ct. 890 (2009). It is "uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and punishment to ensue." *Koon v. United States*, 518 U.S. 81, 113 (1996). However, considering several recent Supreme Court cases, it is now truly incumbent on the sentencing court to "make an individualized assessment based on the facts presented" in each case. *Gall* at 602. District Courts "may not presume that the Guidelines range is reasonable." *Id*. at 597.

Because the District Court is in a uniquely "superior position to find facts and judge their import under § 3553(a)," the Appellate Courts must now review all sentences under an abuse-of-discretion standard, regardless of whether the sentence is inside or outside the Guidelines range. *Gall*, 128 S.Ct. at 597, 602. The Supreme Court has explicitly rejected the notion that extraordinary circumstances are required to justify a sentence outside the Guidelines range. *Id*. at 595. The Supreme Court also rejected "the use of a rigid mathematical formula that uses the percentage of a departure as the standard for determining the strength of the justifications required for a specific sentence." *Id*. So long as sentences that differ from the Guidelines are justified, a sentencing court's decision stands unassailable on appeal. *See*, *e.g.*, *United States v. Jiminez-Gutierrez*, 491 F.3d 923 (8th Cir. 2007)(affirming substantial downward departure that was justified on record, and noting that even where circuit courts disagree with the degree of a trial judge's departure, the discretion to make such decisions is within the sole province of the District Court);

7

*United States v. Gonzalez-Alvorado*, 477 F.3d 648, 650 (8th Cir. 2007)(noting that a sentence that varies from the Guidelines range is reasonable so long as the judge offers appropriate justifications under §3553(a) factors).

After using the Guidelines to determine the initial benchmark and allowing the parties to argue their respective positions, the Court should then make an individualized assessment of the unique facts of the case based on the § 3553(a) factors. *Gall*, 128 S.Ct. at 596-97. "After settling on the appropriate sentence, he must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing." *Id*. at 597. Ultimately, this Court is charged with a duty to protect the public, as well as the civil rights of Mr. Martin, with its experience, its wisdom, and the discretion vested in it by the Constitution and Congress.

**B.  Downward Variance is Warranted Under the §3553(a) Factors.**

Mr. Martin has filed a motion for downward variance contemporaneously with this sentencing position asking the Court to depart from the sentencing guidelines pursuant to the Section 3553(a) factors. Such a variance is warranted based on the obvious emotional circumstances that were at play in this case which led to some poor decisions on Mr. Martin's part and ultimately the charges in this case. With the passage of time, education, and therapy, Mr. Martin now is in a much better position to accept responsibility for his actions in the past. More importantly, he now has the tools to cope with stressors that will come his way in the future. The time he has spent behind bars since his arrest in this case is the most he has ever spent in custody. The fifteen months in custody is enough time to

deter Mr. Martin from engaging in criminal activity in the future and represents a serious consequence for the crimes he committed.

<u>**CONCLUSION**</u>

In determining an appropriate sentence, the Court should impose a sentence that is sufficient, but not greater than necessary, to comply with the factors set forth in 18 U.S.C. § 3553(a).  For all the reasons stated herein, Mr. Martin asks for a sentence of time served.

Respectfully submitted,

DEVORE LAW OFFICE, P.A.

Dated:  September 11, 2023.   *s/Kevin W. DeVore*

Kevin W. DeVore, #267302
724 Bielenberg Drive, Suite 110
Woodbury, MN  55125
(651) 435-6500
*Attorney for Julyen Alonzo Martin*